## MILLER BROS. v. RAILWAY COMPANY.

1. The findings of fact by the Circuit Judge in a law case heard by him, by consent, without a jury, are not reviewable on appeal.

2. The act (Gen. Stat., § 1513) which provides that an initial railroad company may discharge itself from liability for the loss of through freight transported "over its own and connecting *roads*" only by producing "a receipt in writing" for such freight "from the *corporation* to whom it was its duty to deliver said articles in the regular course of transportation," should be construed liberally; and so construed, it requires the initial railroad company to produce the proper receipt from "a *steamship* company" to whom the freight was delivered as the next connecting line of transportation—especially so when the bill of lading provides that the initial company shall be released when the goods are "delivered to connecting railroads or steamship lines by which it is to be carried to its destination."

3. But this requirement of the statute was not so free from doubt as to charge the initial road with "wilful failure or refusal" to furnish such proper receipt, where, in reply to a demand from the consignor for a receipt from the corporation to which the goods were delivered, it procured and furnished the receipt only of the railroad company to which the intermediate steamboat carrier had made delivery. And there having been no such "wilful failure or refusal," the initial company, when sued for these goods, could produce at the trial, in its defence, the receipt of the steamship company.

4. Any written acknowledgment which identifies the goods and admits their delivery by the initial road, is a sufficient "receipt in writing" under this statute.

- Before NORTON, J., Richland, October, 1889.

This action was commenced February 16, 1889. The opinion states the case.

*Messrs. Lyles & Haynsworth*, for appellants.

*Messrs. Brawley & Barnwell*, contra.

October 4, 1890. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This action was brought to recover from the defendant company damages for the loss, alleged to be $650, of certain cotton and paper-stock (whatever that may be), shipped by them upon defendant's railroad, to be delivered to plaintiff's own order at Buffalo, in the State of New York. The proof was that the property was delivered to the defendant corporation at Columbia, S. C., and that "the connecting lines to Buffalo" were the steamship company from Charleston to New York City, and thence by the N. Y. C. & H. R. Railroad. It did not clearly appear what became of the property, but for the purposes of this case it may be assumed, as found by Judge Norton, that "the goods were somewhere on the road delayed, and substituted with worthless stuff; and therefore did not reach their destination, and were a total loss to the plaintiffs." Assuming this, the question was whether the defendant company, "the initial corporation" in the connecting lines to its destination, Buffalo, N. Y., was liable in damages for its loss, or had, under the act upon the subject, discharged itself by delivering the property to the corporation to whom it was its duty to deliver the same in the regular course of transportation.

The plaintiffs proved the following receipts or bills of lading under which the goods described in the complaint were received by defendant, marked "P." and "Q."

"EXHIBIT P.

"No. 17.                    SOUTH CAROLINA RAILWAY,

"COLUMBIA, S. C., Oct. 3, 1887.

"Received of Miller Bros. for transportation as per marks and directions as herein given, subject to the conditions stated on the

back of this receipt, and to which by acceptance shipper assents, the following described bales of cotton :

| Marks. | Number of Bales. | Consignee and Destination. |
|---|---|---|
| K. V. X., | (3) Three B. C. | O | nfy |
| Frt. pre- | paid to Buffalo. | J. A. Schreck, |
| Rate 50 ct. | per 100 lbs to New York. | Buffalo, N. Y. |

"To be shipped via S. C., at through rate of —— per bale.

"D. McQUEEN,

"Per W. H. CASSON, JR."

"The conditions of this receipt are : 1st. That the said South Carolina Railway Company shall only be accountable for the property named in this receipt while upon its own road. That, acting as forwarders only, they are released when the same is by them delivered to connecting railroads or steamship lines by which it is to be carried to its destination. 3rd. And it is further stipulated and agreed, that the South Carolina Railway or any connecting lines does not assume any marine risks, and that no liability will be assumed for the wrong carriage or wrong delivery of cotton marked with initials, numbered, or imperfectly marked. 4th. It is further stipulated and agreed, that in case of loss or detriment, or damage done to or sustained by the cotton herein receipted for during such transportation, whereby any legal liability or responsibility shall or may be incurred, that company alone shall be held answerable therefor in whose actual custody the same may be at the time of the happening of such loss, detriment, or damage ; and the carriers so liable shall have the full benefit of any insurance that may have been effected upon or on account of said cotton. 5th. And it is further agreed, that the amount of loss and damage so accruing, so far as it shall fall upon the carriers above described, shall be computed at the value or cost of the said cotton at the place and at the time of shipment under the bill of lading. *Notice.* In accepting this bill of lading, the shipper, or other agent of the property carried, expressly accepts and agrees to all its stipulations, exceptions, and conditions.

"In witness whereof the agent hath affirmed on the face of this

bill of lading. This receipt to be presented without alteration or erasure."

"EXHIBIT Q.

"No. 16.        SOUTH CAROLINA RAILWAY,

"COLUMBIA, S. C., Oct. 3, 1887.

"Received of Miller Bros. for transportation, &c. (as in above receipt):

| Marks. | Number of Bales. | Consignee and Destination. |
|---|---|---|
| W. I. D. | (3) Three B. paper stock. | O \| nfy. |
| T. I. C. | (5) Five B. paper stock. | J. A. Schreck, |
| . | Weight 4658 lbs. | Buffalo, N. Y. |
| Rate 58 | ct. per 100 lbs. to Buffalo. | |

"To be shipped via S. C., at through rate of —— per bale.

"D. McQUEEN,

"Per W. H. CASSON, JR."

Conditions same as on exhibit "P."

Witness says, referring to exhibits "P." and "Q.," that "O nfy" means "shipped to the order of shipper, with directions to notify party named."

On September 14, 1888, Messrs. Lyles & Haynsworth, plaintiffs' attorneys, addressed a letter to the defendant company, requesting that they would deliver "the receipt" taken by said company from the connecting line to which they delivered the cotton, if they did so deliver it. It seems that the matter was referred to Mr. Waring, "general claim agent of the company," and that he, thinking that the receipt required was of the first "connecting railroad," replied immediately that he would write to New York and get the receipt from the New York Central and Hudson River Railroad as requested. On October 5 ensuing, he again wrote, saying that he had succeeded in getting the receipt (enclosing the papers), which would show that the goods in question were delivered by the railway and steamship companies to "the connecting railroad in New York." The plaintiffs' attorneys, however, returned the papers as defective in form and as being "mere copies," and, pending explanations as to the objections made, commenced this action on February 16, 1889. No further reference, however, to these papers need now be made, as

the Circuit Judge refused to admit them in evidence, for the reason that, as he construed the statute (sec. 1513 of General Statutes), the steamship company was the first "connecting line" with the South Carolina Railway Company; and in order to discharge that company, it was necessary to show that the property had been delivered to the steamship company.

A motion was made for a non-suit, but that being refused, the defence called as a witness E. P. Waring, who testified as follows: I am claim and trace agent for the South Carolina Railway Company. (Witness is shown papers marked "A." and "B.," being duplicate receipts of the New York Central and Hudson River Railroad; but Mr. Lyles admits that the signatures on those papers are what they purport to be.) I obtained these papers from the N. Y. & H. R. R. R. Co.'s office in New York City. (Witness is shown paper marked "C." which is as follows, and says), I obtained this paper from Edgerton, agent for the New York and Florida Steamship Line, commonly known as the "Clyde Line":

"CHARLESTON, Oct. 4, '87.

"The following specified goods were received by Clyde Str. Delaware on Oct. 1, '87, from S. C. Ry.:

| Say K. V. X. | 3 Bales Cotton. |
| " W. I. D. | |
| " T. I. C. | 8 " ·P. Stock. |
| (C.) | (Signed) A. Cudworth, for Str. |

"Copy of receipt now in our possession.

"J. E. EDGERTON, Clyde S. S. Co.,

"Feb. 13, '89. Per M. B. PAYNE."

There is no arrangement between the South Carolina Railway and the Steamship Line or connections that one company shall be liable for the losses of the other.

"Mr. Lyles objects to the admission of this paper in evidence. His honor rules that the receipts are not admissible at this moment, because the long delay must first be explained." Witness Waring continues: I supposed Mr. Lyles wanted receipt of connecting line, and I thought it would be best to get the receipt of the next "railroad line," though further off than the steamship

company. I had no idea of refusing a proper receipt—would have been easier to get receipt from the steamship company in Charleston. There was no "wilful refusal" to deliver receipt, &c. (Mr. Lyles objects.)

Alfred Cudworth called: "At the time mentioned I was receiving clerk for the New York and Charleston Steamship Company." When asked whether, as agent of the steamship company, he received these goods (Mr. Lyles objects—only "receipt in writing" admissible), witness answered that he recollected the receipt of the goods, "by referring to his receipts." Says paper dated October 4, 1887, is original, in his handwriting. "I have record of three bales of cotton marked 'K. V. X.'; three bales of paper-stock, marked 'W. I. D.'; and five bales marked 'T. I. C.'; no weights. These are checked off as received. They are records of my office; duplicates were furnished to the South Carolina Railway Company."

X. "The letters N. Y. & C. W. & S. N. Co. mean the lighter company. The goods were conveyed to the steamship by lighter. The lighter company is considered a part of the South Carolina Railway. I cannot tell from those papers whether or not I received cotton or paper stock shipped 'to the order of Miller Bros., notify J. A. Schreck, Buffalo.'"

"By the court: Does the lighter company transport for any other road than the South Carolina Railway? A. No; the lighters carry goods from the railway to the steamship, and from the steamship to the railway. (Mr. Lyles objects to the admission of the paper C. in evidence. Objection overruled, and he excepts.)"

The Circuit Judge, who heard the case without a jury by consent, gave judgment for the defendant company, and the plaintiffs appeal upon the following grounds: "1. Because his honor allowed the witness Waring to testify as to his reasons for not sending the receipt of the connecting line to which it is claimed the goods were delivered, and to his not knowing what receipts were wanted. 2. Because he allowed the witness Cudworth to testify orally to the delivery of the goods by the South Carolina Railway Company to the Steamship Company. 3. Because he allowed the memoranda in the handwriting of the witness (Cud-

worth), dated the 4th day of October, 1887, to be offered in evidence.    4. Because he found that said goods were delivered by the defendant to the Steamship Company," &c.

This is purely a case at law for damages, in which the parties waived trial by jury, and we must therefore consider the decision of the Circuit Judge as a verdict, which, as to the facts found, is not reviewable by us.

But it is urged that the judge committed error of law in admitting certain testimony of the witnesses Waring and Cudworth, in reference to the provisions of section 1513 of the General Statutes, which, among other things, provides as follows: "In case of the loss of or damage to any article or articles delivered to any railroad corporation for transportation over its own and connecting roads, the initial corporation or corporations first receiving the same shall in every case be liable for such loss or damage, but may discharge itself by the production of a receipt in writing for the said article or articles from the corporation to whom it was its duty to deliver said articles, in the regular course of transportation.    In which event the said connecting road or roads shall be severally so liable, but may in succession and in like manner discharge itself or themselves therefrom. Provided, however, that if either or any of the said railroad corporations should wilfully fail or refuse, upon reasonable demand being made to it by any party interested in the production of such receipt, to produce the same, then it shall not be entitled to claim the benefits of such exemption in any action against the said railroad corporation to render it liable for such loss," &c., &c.

This act is comparatively recent, and has never received authoritative construction.    It is a part of the "general railroad law" of the State, and as there is no mention whatever of steamship lines of transportation, or of any other but "railway lines," it is contended that steamship lines not being expressed or even in contemplation, cannot be brought under the requirements of the act.    But, as it seems to us, the object of the enactment being manifestly to provide a proper remedy for the shipper in what is called "through transportation," by making each link—each carrier in the line—liable for its own negligence or conduct causing loss or damage to the property; the act, to promote this

intent, should be construed liberally, so as to include a steamship company which happens to be one of the common carriers in a through line of transportation agreed upon by the parties. If not, there would be no remedy in a case like this; for it is quite clear that it could not be the duty of the South Carolina Railway Company to deliver property to a railroad company beyond seas in the city of New York. Besides, in this case it was one of the conditions upon which the defendant corporation received the property, that it should only be liable for the property while upon its own road; "that acting as forwarders only, they are released when the same is by them delivered to connecting railroads or steamship lines, by which it is to be carried to its destination," &c. We agree with the Circuit Judge that it was necessary, in order to discharge itself from liability, that the defendant corporation should show that the property was delivered to the steamship company at Charleston.

It will be observed, however, that at the time of this transaction the act had not been so construed. When the evidence of delivery was demanded by the plaintiffs, they did not indicate whether they wished the receipt of the steamship company or of the "railroad corporation," first in the line of transportation. According to the express terms of the act, it was so very doubtful whether "the receipt" of the steamship company would suffice to discharge the defendant, that the delay in producing it caused by that doubt, cannot, as we think, fairly be taken as evidence of that "wilful failure or refusal" which the proviso of the act declares shall exclude all benefit of its provisions.

As to the testimony of the witness Cudworth. Without now undertaking to decide whether there are circumstances under which parol testimony may be admissible to prove the delivery of property by one carrier corporation to its next connecting line, we think the testimony of Cudworth as to the receipt of the property by the steamship line, cannot be said to be "merely oral." He said he "recollected the receipt of the goods by referring to my receipts." Being shown the paper dated October 4, 1887, (exhibit C.) he said, "That is the original in my handwriting." "These [describing the property] are checked off as received. They are the records of my office; duplicates were furnished the

REP.]                     April Term, 1890.

South Carolina Railway Company," &c.    We do not understand
that the act requires the receipt spoken of to be in any particu-
lar form.    The intention was to require the delivering company,
in order to discharge itself, to produce such written evidence of
the receipt of the property by the connecting company to which
it is delivered as will shift the liability to account for the pro-
perty to that company.    As it seems to us, the paper of date Oc-
tober 4, 1887, and signed by Alfred Cudworth "for steamer,"
sufficiently identifies the property received, and is substantially
such "receipt in writing" as to be a discharge to the railway com-
pany.

The judgment of this court is, that the judgment of the Cir-
cuit Court be affirmed.